E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ,<br><br>Plaintiff,<br><br>vs.<br><br>DES MOINES PUBLIC SCHOOLS,<br><br>Defendant. | Case No._____<br><br><br><br>**PETITION AND JURY DEMAND** |

**COMES NOW** Plaintiff Fairouz Bishara-Rantisi Martinez and for her causes of action against Defendant Des Moines Public Schools hereby states the following:

## INTRODUCTION

1.     This is an action under the Iowa Civil Rights Act ("ICRA") and Title VII of the Civil Rights Act of 1964, challenging Defendant's discrimination, harassment, and retaliation against Plaintiff.

2.     Plaintiff Fairouz Bishara-Rantisi Martinez ("Fairouz") is a resident of Polk County, Iowa.

3.     Defendant Des Moines Public Schools ("DMPS") is a public school district located in Polk County, Iowa.

4.     The acts about which Plaintiff complains occurred in Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

5.     On November 20, 2024, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendant with the Iowa Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC").

1

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

6.      On September 4, 2025, less than 90 days prior to the filing of this Petition, the ICRC issued a right to sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

7.      Fairouz is a Latina woman.

8.      In April 2022, Fairouz applied for the role of Executive Director of Leadership and Learning with DMPS.

9.      On April 14, 2022, Fairouz completed an initial phone interview, followed by an in-person interview on April 22, 2022, with a panel that included Interim Superintendent Matthew Smith and Executive Director of PreK/Elementary Programs Timothy Schott.

10.     On April 25, 2022, Director of Personnel Tiffany O'Hara informed Fairouz that DMPS had opted not to fill the role and would instead conduct a "national search," implying that Fairouz was not considered a strong candidate.

11.     At the time of her application, Fairouz had 23 years of experience in education and extensive academic credentials, including three master's degrees and a doctorate in Educational Leadership and Administration.

12.     Fairouz's experience and credentials far exceeded those of the non-Latina employee who previously held the Executive Director role.

13.     O'Hara told Fairouz that the panel was impressed with her skills, knowledge, and experience and expressed that DMPS still wanted Fairouz to join the district, just not in the Executive Director role.

14.     Though disappointed, Fairouz accepted O'Hara's encouragement and applied for a Principal position at Hoyt Middle School.

15.     DMPS offered Fairouz the position, which she accepted, and she began working at Hoyt on July 1, 2022.

2

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

16. From the beginning of Fairouz's employment, DMPS was disorganized and unwelcoming.

17. On her first day, DMPS offered Fairouz no structured orientation or onboarding and left her without access to essential resources.

18. For instance, DMPS's computer system did not accept Fairouz's name. When she reported the issue, DMPS claimed her name was "too long" and the IT department was "not prepared for foreign names."

19. Fairouz waited more than a week to gain access to basic systems, forcing her to rely on guidance from a principal at another DMPS middle school.

20. This experience set a troubling tone for Fairouz's tenure at DMPS, making her feel unsupported and marginalized from the start.

**DMPS Fills the Executive Director Role with a Less Qualified White Candidate**

21. In September 2022, Fairouz noticed that Timothy Schott had changed his email signature to "Executive Director of Teaching and Learning," the very position for which Fairouz had applied, the name simply exchanging "Leadership" for "Teaching."

22. DMPS had not reposted the position or announced that it had been filled internally.

23. Schott did not have a doctorate degree and had far less experience in education compared to Fairouz.

24. Schott had fewer years as an administrator than Fairouz. He only had five years of experience as a principal, and he lacked any secondary education experience at the time of his promotion.

25. Schott was simply a well-liked white man in the district.

**EXHIBIT A**

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

26.    This action reinforced Fairouz's sense that her background and qualifications were not truly valued by DMPS, and she grew concerned that biases related to her ethnicity and gender played a role in DMPS's hiring decisions.

27.    Despite these concerns, Fairouz continued to focus on excelling in her role at Hoyt Middle School.  Throughout 2022 and 2023, she worked diligently to build positive systems, improve student outcomes, and support her staff at Hoyt.

**Plaintiff Identifies Disparities in DMPS's Compensation Practices**

28.    During the 2022-2023 school year, Fairouz discovered inequities in DMPS's compensation practices.

29.    Fairouz learned that white male administrators, often with less experience and education, were earning more than she was.

30.    Around the same time, Fairouz discovered that DMPS's pay disparities extended beyond her and disproportionately affected other women of color within the district.

31.    Though DMPS claimed to have equalized administrators' pay in the 2023-2024 contracts, the district refused to make retroactive adjustments, costing Plaintiff an estimated $21,000 in net pay.  This pay disparity also impacted contributions to Fairouz's 403(b), IPERS, and Social Security.

32.    In December 2022, Plaintiff also discovered that DMPS had not honored the terms of her contract regarding sick leave, providing her only 10 sick days instead of the agreed-upon 15.

33.    After months of repeated calls and emails from Fairouz, DMPS finally adjusted her sick leave according to the terms of her contract.

4

EXHIBIT A

E-FILED 2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

**DMPS Fails to Recognize Plaintiff's Accomplishment**

34.     In June 2023, shortly after Fairouz began as Principal, Hoyt Middle School was recognized as a Model Middle School—one of only eleven schools in the country to receive this distinction.

35.     This national award highlighted Hoyt's commitment to improving student outcomes, as well as Fairouz's success as a principal.

36.     Despite the significance of this achievement, DMPS made no formal acknowledgment of the award.

37.     This lack of recognition contributed to the pattern of disregard Fairouz had experienced from DMPS, where her contributions often went unappreciated or ignored.

**DMPS Overlooks Plaintiff for Director of Secondary Teaching and Learning**

38.     In July 2023, Fairouz applied for a position as Director of Secondary Teaching and Learning.

39.     After advancing through the phone screening on July 25, Fairouz felt confident about her performance.

40.     However, on July 28, after Fairouz's second interview, Director of Talent and Personnel Peter LeBlanc informed Fairouz that DMPS had again chosen not to fill the position and would post it again for a "wider pool."

41.     Disappointed and concerned about DMPS's opaque hiring practices, Fairouz emailed Superintendent Dr. Ian Roberts and Associate Superintendent Dr. Matt Smith questioning why she continued to be overlooked for roles for which she was highly qualified.

42.     On August 11, Schott met with Fairouz to explain her rejection for the Director of Secondary Teaching and Learning role.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

43.    During this conversation, Schott told Fairouz that she had a "savior complex" and was "too Latina," specifically criticizing her focus on Latina students.

44.    Given that Latina students make up nearly 30% of the district, Schott's comments were not only offensive, but dismissive of an essential part of the district's demographic.

45.    Schott criticized Fairouz for highlighting her accomplishments, saying that it made others "look bad," and downplayed the importance of Latina students in the district.

46.    Fairouz left this meeting feeling humiliated.

47.    This conversation with Schott made it clear that bias regarding Fairouz's gender and ethnicity was likely influencing DMPS's hiring practices.

48.    Again, DMPS chose to leave this role vacant rather than promoting Fairouz, an extremely qualified Latina candidate.

**Plaintiff Continues to Apply for Administrator Positions with DMPS**

49.    On November 9, 2023, Fairouz applied for the Chief Academic Officer role.

50.    Fairouz's education and experience made her a strong candidate.

51.    Only a week after her application, DMPS changed the job description. Despite the changes, Fairouz remained highly qualified for the position.

52.    Weeks went by without any communication from DMPS.

53.    On February 18, 2024, despite Fairouz's qualifications, DMPS rejected Fairouz for the Chief Academic Officer position without even offering her an interview.

54.    DMPS provided Fairouz no feedback regarding this rejection, which felt dismissive especially given the alignment of Fairouz's experience with the role's demands.

55.    On December 19, 2023, before her rejection from the Chief Academic Officer role, Fairouz also applied for another position as Director of Middle Schools.  This role aligned even more closely with Fairouz's experience and qualifications.

6

**EXHIBIT A**

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

56.     On February 21, 2024, Fairouz participated in an initial phone screening for the Director of Middle Schools position, and on February 25, DMPS invited her for a second-round interview.

57.     In both of these interviews, Fairouz showcased her years of administrative expertise, as well as a deep understanding of the unique needs of middle school students and staff.

58.     However, on March 6, 2024, LeBlanc called Fairouz to inform her that she had not been selected for the Director of Middle Schools role.

59.     The call lasted only 49 seconds, and DMPS again provided no specific feedback or reasons for her rejection.

60.     The brief and impersonal nature of this communication felt dismissive and left Fairouz questioning why DMPS continued to overlook her credentials and leadership capabilities for district roles.

61.     Fairouz's rejections for the Chief Academic Officer and Director of Middle Schools positions continued a troubling pattern at DMPS, where Fairouz's applications for higher-level roles were consistently overlooked, often with little or no explanation.

**DMPS Fills the Director of Middle Schools Position with an Unqualified Candidate**

62.     Shortly after rejecting Fairouz for the Director of Middle Schools position, DMPS appointed Dr. Kabrina Johnson to the role.

63.     Dr. Johnson is a Black woman.

64.     Dr. Johnson had never worked as a principle and had only served briefly as an associate principal and "consultant," and thus had remarkably less experience than Fairouz.

65.     During a site visit to Hoyt in May 2024, Fairouz observed that Dr. Johnson lacked an understanding of Hoyt's challenges and showed little respect for Fairouz.

EXHIBIT A

E-FILED 2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

66.    During this visit, Dr. Johnson barely engaged with Fairouz, spoke to students in a derogatory manner, and belittled teachers.

67.    Dr. Johnson made negative comments about student behavior and attire without considering that finals were approaching and students were excited for summer break.

68.    Within minutes of her arrival, Dr. Johnson asked Fairouz, "Where are you from?"

69.    Dr. Johnson's question was a clear reference to Fairouz's accent, which was inappropriate, invasive, and reduced Fairouz's identity to ethnicity rather than professional accomplishments.

70.    Dr. Johnson failed to acknowledge Hoyt's progress over the past two years or the accomplishments of Fairouz's team.

71.    Dr. Johnson seemed determined to tear Hoyt down.

72.    Dr. Johnson's lack of engagement with staff, combined with her cursory judgements about the school environment, left Fairouz feeling concerned about how she would effectively lead DMPS's middle schools.

73.    Dr. Johnson's appointment and initial interactions with Fairouz further highlighted the patterns of exclusion and disregard Fairouz experienced throughout her time at DMPS.

74.    Moreover, Dr. Johnson's lack of qualifications and experience compared to Fairouz's underscored DMPS's ongoing practice of passing over qualified, diverse candidates in favor of less experienced individuals and further confirmed that DMPS prioritized Black and white candidates over other ethnicities and races.

75.    This pattern contributed to Fairouz's sense of isolation and raised further questions about whether her identity as a Latina woman played a role in DMPS's hiring decisions.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

**Plaintiff is Told She is Too "Aggressive"**

76.     Around May 2024, Human Resources Director Sheila Mason accused Fairouz of being "aggressive" during a meeting about another staff member's email that had violated district policy.

77.     Fairouz found her use of the word "aggressive" offensive, as it plays into racial stereotypes often applied to women of color.

78.     When Fairouz voiced her discomfort with the word, Mason dismissed her concerns, again amplifying the discriminatory treatment Fairouz was facing at DMPS.

**DMPS Fails to Address Safety Concerns at Hoyt**

79.     On August 26, 2024, a serious incident occurred involving a missing student on a bus.

80.     That day, Fairouz was mourning the recent death of a mentor and long-time friend but remained engaged and in communication with her team.

81.     That afternoon, Fairouz received a call from the student's distressed parent, who had been given Fairouz's number by Student Services Director Melissa Krumm. The parent was frantic and accusatory, threatening legal action.

82.     Fairouz responded empathetically, saying she would be equally upset if she was in the parent's situation.

83.     Fairouz called Associate Principal Brittany Oakley to follow up and ensure the issue was being addressed. Later, Fairouz received updates from Ms. Oakley that Public Safety was assisting.

84.     On September 11, Fairouz emailed Ms. Krumm and Dr. Johnson, expressing urgent concerns about safety at Hoyt.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

85.     Fairouz explained that Hoyt's staff was facing continued safety threats from certain students, yet DMPS had provided no meaningful support.

86.     Fairouz received no response from either Krumm or Dr. Johnson.

87.     This lack of action reinforced the alarming pattern of DMPS denying Fairouz and her team resources to support Hoyt's staff and students.

**Plaintiff is Called in to Meet with Administrators**

88.     On September 17, Fairouz was summoned to a meeting with Dr. Johnson, Mason, and Equity & Inclusion Program Manager and Title IX investigator Carol Wynn-Green.

89.     The stated purpose of the meeting was to discuss "concerns" related to Fairouz's handling of incidents at Hoyt, specifically regarding discipline and staff relations.

90.     However, the meeting quickly took on an accusatory and condescending tone. The administrators dominated the conversation and made vague accusations about Fairouz's supposed failure to create a supportive environment without offering specific incidents or allowing Fairouz to explain or provide context.

91.     The administrators' questions and remarks were infantilizing, as if they were instructing Fairouz on basic interpersonal skills rather than addressing legitimate concerns.

92.     They accused Fairouz of "misrepresenting" disciplinary actions involving campus monitor Aarron Weets, even though Human Resources Manager Nancy Van Wyck had approved the language and actions during the disciplinary process.

93.     It became evident that none of the administrators had consulted Van Wyck, despite her direct involvement in the incidents they referenced.

94.     Following this meeting, Fairouz felt humiliated, unsupported, and targeted. The administrators' refusal to offer specific examples of Fairouz's alleged failings made it impossible for Fairouz to address or refute their claims.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

95.     After the meeting, Fairouz documented her experiences, noting how their accusations and dismissive attitudes undermined her ability to lead effectively.

**Plaintiff Complains to Human Resources**

96.     On September 23, 2024, Fairouz filed a complaint with the DMPS Human Resources, detailing an increasingly hostile work environment and the ongoing biases against her.

97.     In her complaint, Fairouz requested protections against retaliation, fearing potential consequences for reporting these issues.

98.     On September 26, Human Resources Manager Susan Tallman responded promptly to Fairouz's complaint, and on October 4, informed Fairouz that DMPS assigned attorney Becky Reif to investigate her complaints.

**DMPS Discriminatorily Disciplines Students Despite Plaintiff's Objections**

99.     On October 2, another bus incident occurred involving students who misbehaved during a route that had deviated to the Iowa State Fairgrounds.

100.    At 4:15 p.m., while Fairouz was in a faculty meeting, Dr. Johnson texted her about an issue at the fairgrounds" but provide little context.

101.    Fairouz immediately notified her associate principals, Oakley and Kennedy, about the incident.

102.    When Fairouz arrived, she spoke with the substitute bus driver, who had mistakenly deviated from the route, and an associate who was present for the incident.

103.    Parents were called to pick up their children.

104.    Fairouz learned that the situation has escalated, in part, due to a language barrier and students not knowing their addresses.

105.    Although the students had acted out, the situation was distressing for them as well.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

106.   Fairouz worked to resolve the issue, apologized to parents, and even drafted an email in English and Spanish to communicate the incident to families.

107.   The following morning, Dr. Johnson and Oakley reviewed the bus footage without consulting Fairouz.

108.   Dr. Johnson unilaterally decided to suspend the students involved and ban them from the bus for the remainder of the year.

109.   Fairouz strongly objected to this decision, as it was inconsistent with prior disciplinary actions and disregarded at least one student's Behavioral Intervention Plan.

110.   Fairouz knew that if any of the students filed civil rights complaints, DMPS would need to show that similar discipline had been imposed in the past.

111.   DMPS had *not* imposed similar discipline in the past, and Fairouz believed this disparity would be indicative of discrimination.

112.   Fairouz informed Oakley that the decision was unethical and illegal and stated that she would not endorse it.

113.   Fairouz's refusal to violate the law appeared to mark a turning point, because shortly after she faced additional hostility from DMPS leadership.

### DMS Places Plaintiff on Administrative Leave

114.   About a week later, on October 9, Reif interviewed Fairouz regarding her Human Resources complaint.

115.   During this meeting, Fairouz provided documentation and specific examples of the hostility and discrimination she had faced, including the troubling September 17 meeting with Mason, Wynn-Green, and Dr. Johnson.

116.   Fairouz believed that this interview would lead to meaningful action and accountability within the district.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

117.    The next day, October 10, Chief Academic Officer Dr. Robert Lundin called Fairouz and instructed her to meet him at the Smouse Building.

118.    When Fairouz arrived, Dr. Lundin, along with LeBlanc, informed Fairouz that she was being placed on administrative leave.

119.    Fairouz asked for the reasons behind this sudden decision, but they refused to provide any explanation, offering no timeline for the investigation or details regarding Fairouz's status.

120.    They instructed Fairouz not to contact anyone in the district.

121.    Dr. Lundin then escorted Fairouz back to her office so she could collect her belongings.

122.    DMPS required Fairouz to hand over her keys, computer, and badge, and she was escorted out of the building.

123.    On November 7, attorney Jazmine Polk interviewed Fairouz as part of an investigation into another employee's complaint about her.

124.    Fairouz learned for the first time that Associate Principal Oakley had filed a hostile work environment claim against her.

125.    Fairouz and Oakley had always maintained a positive working relationship.  Fairouz had mentored Oakley and supported her professional development, so the allegations shocked Fairouz.

126.    The nature and timing of Oakley's allegations led Fairouz to believe this was a coordinated effort with Dr. Johnson to further retaliate against Fairouz, silence her complaints, and punish her for refusing to approve the illegal bus suspensions.

**EXHIBIT A**

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

127.    On November 20, 2024, Fairouz filed a complaint with the Iowa Civil Rights Commission against DMPS, alleging discrimination and a hostile work environment based on her race, national origin, and gender.

128.    As of the date of her filing, Fairouz had been on administrative leave for over a month. Unlike other principals placed on leave, Fairouz received no updates, support, or follow-up communication during that time.

129.    Peter LeBlanc was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

130.    Susan Tallman was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

131.    Tiffany O'Hara was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

132.    Dr. Ian Roberts was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

133.    Dr. Matt Smith was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

134.    Timothy Schott was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

135.    Dr. Kabrina Johnson was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

136.    Sheila Mason was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

137.    Carol Wynn-Green was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

138.    Dr. Robert Lundin was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

## COUNT I
## VIOLATIONS OF THE IOWA CIVIL RIGHTS ACT
## SEX DISCRIMINATION, RACE DISCRIMINATION, NATIONAL ORIGIN DISCRIMINATION, and HARASSMENT

139.    Plaintiff repleads paragraphs 1 through 138 as if fully set forth herein.

140.    Defendant subjected Plaintiff to harassment and discrimination, including adverse actions that subjected Plaintiff to some harm in relation to her employment in violation of the ICRA.

141.    Plaintiff's sex, race, and national origin, separately or in combination, were motivating factors in Defendant's discrimination and harassment.

142.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## RETALIATION

143.    Plaintiff repleads paragraphs 1 through 142 as if fully set forth herein.

144.    Plaintiff complained to Defendant about discrimination and harassment and otherwise opposed practices made unlawful by the ICRA.

145.    Defendant retaliated against Plaintiff because of her complaints and opposition to discrimination and harassment.

15

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

146.    Plaintiff's protected activity was a motivating factor in Defendant's retaliation against her.

147.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT III
## VIOLATIONS OF TITLE VII
## SEX DISCRIMINATION, RACE DISCRIMINATION, NATIONAL ORIGIN DISCRIMINATION, and HARASSMENT

148.    Plaintiff repleads paragraphs 1 through 147 as if fully set forth herein.

149.    Defendant subjected Plaintiff to harassment and discrimination, including adverse actions that subjected Plaintiff to some harm in relation to her employment in violation of Title VII.

150.    Plaintiff's sex, race, and national origin, separately or in combination, were motivating factors in Defendant's harassment and discrimination.

151.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964.

## COUNT IV
## VIOLATION OF TITLE VII
## RETALIATION

152.    Plaintiff repleads paragraphs 1 through 151 as if fully set forth herein.

153.    Plaintiff engaged in protected activity by complaining to Defendant about discrimination and harassment and otherwise opposing practices made unlawful by Title VII of the Civil Rights Act of 1964.

154.    Defendant retaliated against Plaintiff because of her complaints and opposition to discrimination and harassment.

155.    Plaintiff's protected activity was a motivating factor in Defendant's retaliation against her.

156.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964.

## COUNT V
## VIOLATION OF THE EQUAL PAY ACT OF 1963
## WAGE DISCRIMINATION

157.    Plaintiff repleads paragraphs 1 through 156 as if fully set forth herein.

17

EXHIBIT A

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

158.    Defendant discriminated against Plaintiff by paying her less than her male counterparts performing substantially equal work, in violation of the EPA.

159.    Plaintiff and the following individuals were employed as administrators by Defendant Des Moines Public Schools: Chris Schmidt, Thomas Hoffman, Joseph Green, and Victor Colemon.

160.    Plaintiff is a woman.

161.    Chris Schmidt, Thomas Hoffman, Joseph Green, and Victor Colemon are men.

162.    Plaintiff and the identified male comparators performed jobs requiring equal skill.

163.    Plaintiff and the identified male comparators performed jobs requiring equal effort.

164.    Plaintiff and the identified male comparators performed jobs requiring equal responsibility.

165.    Plaintiff and the identified male comparators performed their jobs under similar working conditions.

166.    Defendant's violation of the EPA was willful.  It either knew its conduct was unlawful or acted with reckless disregard for whether its compensation practices were prohibited by the statute.

167.    As a result of Defendant's illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to lost wages and employment benefits.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for appropriate equitable and injunctive relief, for prejudgment and post judgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the EPA.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

18

**EXHIBIT A**

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

_/s/ Ashley Griffin_

FIEDLER LAW FIRM, P.L.C.
Amy Beck AT0013022
amy@employmentlawiowa.com
Ashley Griffin AT0015719
ashley@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF

19

**EXHIBIT A**

E-FILED  2025 DEC 01 5:10 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ, <br><br> Plaintiff, <br><br> vs. <br><br> DES MOINES PUBLIC SCHOOLS, <br><br> Defendant. | Case No._____ <br><br><br> **ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:    DES MOINES PUBLIC SCHOOLS

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Petition is attached to this notice.  The attorneys for the plaintiff are Amy Beck and Ashley Griffin of Fiedler Law Firm, P.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa, 50131. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 561-5818 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

**EXHIBIT B**

E-FILED  2025 DEC 03 2:56 PM POLK - CLERK OF DISTRICT COURT

## Iowa Judicial Branch

| | |
|---|---|
| *Case No.* | **LACL164722** |
| *County* | **Polk** |

*Case Title*   FAIROUZ B R MARTINEZ VS DES MOINES PUBLIC SCHOOLS

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 561-5818** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **12/03/2025 02:56:57 PM**



*District Clerk of Court or/by Clerk's Designee of*  Polk            *County*
**/s/ Cynthia (Cindi) Richey**

**EXHIBIT B**

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ, <br><br> Plaintiff, <br><br> vs. <br><br> DES MOINES PUBLIC SCHOOLS, <br><br> Defendant. | Case No. LACL164722 <br><br><br><br> **AMENDED PETITION AND JURY DEMAND** |

**COMES NOW** Plaintiff Fairouz Bishara-Rantisi Martinez and for her causes of action against Defendant Des Moines Public Schools hereby states the following:

## INTRODUCTION

1.    This is an action under the Iowa Civil Rights Act ("ICRA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Equal Pay Act of 1963 ("EPA") challenging Defendant's discrimination, harassment, and retaliation against Plaintiff.

2.    Plaintiff Fairouz Bishara-Rantisi Martinez ("Fairouz") is a resident of Dallas County, Iowa.

3.    Defendant Des Moines Public Schools ("DMPS") is a public school district located in Polk County, Iowa.

4.    The acts about which Plaintiff complains occurred in Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

5.    On November 20, 2024, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendant with the Iowa Office of Civil Rights ("IOCR") and the Equal Employment Opportunity Commission ("EEOC").

1

**EXHIBIT C**

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

6.    On September 4, 2025, less than 90 days prior to the filing of this Petition, the IOCR issued a right to sue letter with respect to Plaintiff's charges.

7.    On December 5, 2025, less than 90 days prior to the filing of this Petition, the EEOC issued a right to sue letter with respect to Plaintiff's charges.

8.    On July 25, 2025, within 300 days of the acts of which she complains, Plaintiff filed additional charges of employment discrimination against Defendant with the IOCR and the EEOC.

9.    On December 11, 2025, less than 90 days prior to the filing of this Amended Petition, the IOCR issued a right to sue letter with respect to Plaintiff's charges.

10.   On February 9, 2026, less than 90 days prior to the filing of this Amended Petition, the EEOC issued a right to sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

11.   Fairouz is a Latina woman.

12.   In April 2022, Fairouz applied for the role of Executive Director of Leadership and Learning with DMPS.

13.   On April 14, 2022, Fairouz completed an initial phone interview, followed by an in-person interview on April 22, 2022, with a panel that included Interim Superintendent Matthew Smith and Executive Director of PreK/Elementary Programs Timothy Schott.

14.   On April 25, 2022, Director of Personnel Tiffany O'Hara informed Fairouz that DMPS had opted not to fill the role and would instead conduct a "national search," implying that Fairouz was not considered a strong candidate.

15.   At the time of her application, Fairouz had 23 years of experience in education and extensive academic credentials, including three master's degrees and a doctorate in Educational Leadership and Administration.

2

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

16.    Fairouz's experience and credentials far exceeded those of the non-Latina employee who previously held the Executive Director role.

17.    O'Hara told Fairouz that the panel was impressed with her skills, knowledge, and experience and expressed that DMPS still wanted Fairouz to join the district, just not in the Executive Director role.

18.    Though disappointed, Fairouz accepted O'Hara's encouragement and applied for a Principal position at Hoyt Middle School.

19.    DMPS offered Fairouz the position, which she accepted, and she began working at Hoyt on July 1, 2022.

20.    From the beginning of Fairouz's employment, DMPS was disorganized and unwelcoming.

21.    On her first day, DMPS offered Fairouz no structured orientation or onboarding and left her without access to essential resources.

22.    For instance, DMPS's computer system did not accept Fairouz's name.  When she reported the issue, DMPS claimed her name was "too long" and the IT department was "not prepared for foreign names."

23.    Fairouz waited more than a week to gain access to basic systems, forcing her to rely on guidance from a principal at another DMPS middle school.

24.    This experience set a troubling tone for Fairouz's tenure at DMPS, making her feel unsupported and marginalized from the start.

**DMPS Fills the Executive Director Role with a Less Qualified White Candidate**

25.    In September 2022, Fairouz noticed that Timothy Schott had changed his email signature to "Executive Director of Teaching and Learning," the very position for which Fairouz had applied, the name simply exchanging "Leadership" for "Teaching."

3

EXHIBIT C

E-FILED 2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

26.    DMPS had not reposted the position or announced that it had been filled internally.

27.    Schott did not have a doctorate degree and had far less experience in education compared to Fairouz.

28.    Schott had fewer years as an administrator than Fairouz. He only had five years of experience as a principal, and he lacked any secondary education experience at the time of his promotion.

29.    Schott was simply a well-liked white man in the district.

30.    This action reinforced Fairouz's sense that her background and qualifications were not truly valued by DMPS, and she grew concerned that biases related to her ethnicity and gender played a role in DMPS's hiring decisions.

31.    Despite these concerns, Fairouz continued to focus on excelling in her role at Hoyt Middle School.  Throughout 2022 and 2023, she worked diligently to build positive systems, improve student outcomes, and support her staff at Hoyt.

**Plaintiff Identifies Disparities in DMPS's Compensation Practices**

32.    During the 2022-2023 school year, Fairouz discovered inequities in DMPS's compensation practices.

33.    Fairouz learned that white male administrators, often with less experience and education, were earning more than she was.

34.    Around the same time, Fairouz discovered that DMPS's pay disparities extended beyond her and disproportionately affected other women of color within the district.

35.    Though DMPS claimed to have equalized administrators' pay in the 2023-2024 contracts, the district refused to make retroactive adjustments, costing Plaintiff an estimated $21,000 in net pay.  This pay disparity also impacted contributions to Fairouz's 403(b), IPERS, and Social Security.

4

EXHIBIT C

36.    In December 2022, Plaintiff also discovered that DMPS had not honored the terms of her contract regarding sick leave, providing her only 10 sick days instead of the agreed-upon 15.

37.    After months of repeated calls and emails from Fairouz, DMPS finally adjusted her sick leave according to the terms of her contract.

**DMPS Fails to Recognize Plaintiff's Accomplishment**

38.    In June 2023, shortly after Fairouz began as Principal, Hoyt Middle School was recognized as a Model Middle School—one of only eleven schools in the country to receive this distinction.

39.    This national award highlighted Hoyt's commitment to improving student outcomes, as well as Fairouz's success as a principal.

40.    Despite the significance of this achievement, DMPS made no formal acknowledgment of the award.

41.    This lack of recognition contributed to the pattern of disregard Fairouz had experienced from DMPS, where her contributions often went unappreciated or ignored.

**DMPS Overlooks Plaintiff for Director of Secondary Teaching and Learning**

42.    In July 2023, Fairouz applied for a position as Director of Secondary Teaching and Learning.

43.    After advancing through the phone screening on July 25, Fairouz felt confident about her performance.

44.    However, on July 28, after Fairouz's second interview, Director of Talent and Personnel Peter LeBlanc informed Fairouz that DMPS had again chosen not to fill the position and would post it again for a "wider pool."

5

EXHIBIT C

45.    Disappointed and concerned about DMPS's opaque hiring practices, Fairouz emailed Superintendent Dr. Ian Roberts and Associate Superintendent Dr. Matt Smith questioning why she continued to be overlooked for roles for which she was highly qualified.

46.    On August 11, Schott met with Fairouz to explain her rejection for the Director of Secondary Teaching and Learning role.

47.    During this conversation, Schott told Fairouz that she had a "savior complex" and was "too Latina," specifically criticizing her focus on Latina students.

48.    Given that Latino students make up nearly 30% of the district, Schott's comments were not only offensive, but dismissive of an essential part of the district's demographic.

49.    Schott criticized Fairouz for highlighting her accomplishments, saying that it made others "look bad," and downplayed the importance of Latino students in the district.

50.    Fairouz left this meeting feeling humiliated.

51.    This conversation with Schott made it clear that bias regarding Fairouz's gender and ethnicity was likely influencing DMPS's hiring practices.

52.    Again, DMPS chose to leave this role vacant rather than promoting Fairouz, an extremely qualified Latina candidate.

### Plaintiff Continues to Apply for Administrator Positions with DMPS

53.    On November 9, 2023, Fairouz applied for the Chief Academic Officer role.

54.    Fairouz's education and experience made her a strong candidate.

55.    Only a week after her application, DMPS changed the job description. Despite the changes, Fairouz remained highly qualified for the position.

56.    Weeks went by without any communication from DMPS.

57.    On February 18, 2024, despite Fairouz's qualifications, DMPS rejected Fairouz for the Chief Academic Officer position without even offering her an interview.

6

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

58.    DMPS provided Fairouz no feedback regarding this rejection, which felt dismissive especially given the alignment of Fairouz's experience with the role's demands.

59.    On December 19, 2023, before her rejection from the Chief Academic Officer role, Fairouz also applied for another position as Director of Middle Schools.  This role aligned even more closely with Fairouz's experience and qualifications.

60.    On February 21, 2024, Fairouz participated in an initial phone screening for the Director of Middle Schools position, and on February 25, DMPS invited her for a second-round interview.

61.    In both of these interviews, Fairouz showcased her years of administrative expertise, as well as a deep understanding of the unique needs of middle school students and staff.

62.    However, on March 6, 2024, LeBlanc called Fairouz to inform her that she had not been selected for the Director of Middle Schools role.

63.    The call lasted only 49 seconds, and DMPS again provided no specific feedback or reasons for her rejection.

64.    The brief and impersonal nature of this communication felt dismissive and left Fairouz questioning why DMPS continued to overlook her credentials and leadership capabilities for district roles.

65.    Fairouz's rejections for the Chief Academic Officer and Director of Middle Schools positions continued a troubling pattern at DMPS, where Fairouz's applications for higher-level roles were consistently overlooked, often with little or no explanation.

**DMPS Fills the Director of Middle Schools Position with an Unqualified Candidate**

66.    Shortly after rejecting Fairouz for the Director of Middle Schools position, DMPS appointed Dr. Kabrina Johnson to the role.

67.    Dr. Johnson is a Black woman.

7

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

68.    Dr. Johnson had never worked as a principal and had only served briefly as an associate principal and "consultant," and thus had remarkably less experience than Fairouz.

69.    During a site visit to Hoyt in May 2024, Fairouz observed that Dr. Johnson lacked an understanding of Hoyt's challenges and showed little respect for Fairouz.

70.    During this visit, Dr. Johnson barely engaged with Fairouz, spoke to students in a derogatory manner, and belittled teachers.

71.    Dr. Johnson made negative comments about student behavior and attire without considering that finals were approaching and students were excited for summer break.

72.    Within minutes of her arrival, Dr. Johnson asked Fairouz, "Where are you from?"

73.    Dr. Johnson's question was a clear reference to Fairouz's accent, which was inappropriate, invasive, and reduced Fairouz's identity to ethnicity rather than professional accomplishments.

74.    Dr. Johnson failed to acknowledge Hoyt's progress over the past two years or the accomplishments of Fairouz's team.

75.    Dr. Johnson seemed determined to tear Hoyt down.

76.    Dr. Johnson's lack of engagement with staff, combined with her cursory judgments about the school environment, left Fairouz feeling concerned about how she would effectively lead DMPS's middle schools.

77.    Dr. Johnson's appointment and initial interactions with Fairouz further highlighted the patterns of exclusion and disregard Fairouz experienced throughout her time at DMPS.

78.    Moreover, Dr. Johnson's lack of qualifications and experience compared to Fairouz's underscored DMPS's ongoing practice of passing over qualified, diverse candidates in favor of less experienced individuals and further confirmed that DMPS prioritized Black and white candidates over other ethnicities and races.

8

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

79. This pattern contributed to Fairouz's sense of isolation and raised further questions about whether her identity as a Latina woman played a role in DMPS's hiring decisions.

### Plaintiff is Told She is Too "Aggressive"

80. Around May 2024, Human Resources Director Sheila Mason accused Fairouz of being "aggressive" during a meeting about another staff member's email that had violated district policy.

81. Fairouz found her use of the word "aggressive" offensive, as it plays into racial stereotypes often applied to women of color.

82. When Fairouz voiced her discomfort with the word, Mason dismissed her concerns and continued using the word, again amplifying the discriminatory treatment Fairouz was facing at DMPS.

### DMPS Fails to Address Safety Concerns at Hoyt

83. On August 26, 2024, a serious incident occurred involving a missing student on a bus.

84. That day, Fairouz was mourning the recent death of a mentor and long-time friend but remained engaged and in communication with her team.

85. That afternoon, Fairouz received a call from the student's distressed parent, who had been given Fairouz's number by Student Services Director Melissa Krumm. The parent was frantic and accusatory, threatening legal action.

86. Fairouz responded empathetically, saying she would be equally upset if she was in the parent's situation.

87. Fairouz called Associate Principal Brittany Oakley to follow up and ensure the issue was being addressed. Later, Fairouz received updates from Ms. Oakley that Public Safety was assisting.

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

88.    On September 11, Fairouz emailed Ms. Krumm and Dr. Johnson, expressing urgent concerns about safety at Hoyt.

89.    Fairouz explained that Hoyt's staff was facing continued safety threats from certain students, yet DMPS had provided no meaningful support.

90.    Fairouz received no response from either Krumm or Dr. Johnson.

91.    This lack of action reinforced the alarming pattern of DMPS denying Fairouz and her team resources to support Hoyt's staff and students.

**Plaintiff is Called in to Meet with Administrators**

92.    On September 17, Fairouz was summoned to a meeting with Dr. Johnson, Mason, and Equity & Inclusion Program Manager and Title IX investigator Carol Wynn-Green.

93.    The stated purpose of the meeting was to discuss "concerns" related to Fairouz's handling of incidents at Hoyt, specifically regarding discipline and staff relations.

94.    However, the meeting quickly took on an accusatory and condescending tone. The administrators dominated the conversation and made vague accusations about Fairouz's supposed failure to create a supportive environment without offering specific incidents or allowing Fairouz to explain or provide context.

95.    The administrators' questions and remarks were infantilizing, as if they were instructing Fairouz on basic interpersonal skills rather than addressing legitimate concerns.

96.    They accused Fairouz of "misrepresenting" disciplinary actions involving campus monitor Aarron Weets, even though Human Resources Manager Nancy Van Wyck had approved the language and actions during the disciplinary process.

97.    It became evident that none of the administrators had consulted Van Wyck, despite her direct involvement in the incidents they referenced.

10

EXHIBIT C

98.     Following this meeting, Fairouz felt humiliated, unsupported, and targeted. The administrators' refusal to offer specific examples of Fairouz's alleged failings made it impossible for Fairouz to address or refute their claims.

99.     After the meeting, Fairouz documented her experiences, noting how their accusations and dismissive attitudes undermined her ability to lead effectively.

### Plaintiff Complains to Human Resources

100.     On September 23, 2024, Fairouz filed a complaint with the DMPS Human Resources, detailing an increasingly hostile work environment and the ongoing biases against her.

101.     In her complaint, Fairouz requested protections against retaliation, fearing potential consequences for reporting these issues.

102.     On September 26, Human Resources Manager Susan Tallman responded promptly to Fairouz's complaint, and on October 4, informed Fairouz that DMPS assigned attorney Becky Reif to investigate her complaints.

### DMPS Discriminatorily Disciplines Students Despite Plaintiff's Objections

103.     On October 2, another bus incident occurred involving students who misbehaved during a route that had deviated to the Iowa State Fairgrounds.

104.     At 4:15 p.m., while Fairouz was in a faculty meeting, Dr. Johnson texted her about an issue at the fairgrounds" but provided little context.

105.     Fairouz immediately notified her associate principals, Oakley and Kennedy, about the incident.

106.     When Fairouz arrived, she spoke with the substitute bus driver, who had mistakenly deviated from the route, and an associate who was present for the incident.

107.     Parents were called to pick up their children.

11

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

108. Fairouz learned that the situation has escalated, in part, due to a language barrier and students not knowing their addresses.

109. Although the students had acted out, the situation was distressing for them as well.

110. Fairouz worked to resolve the issue, apologized to parents, and even drafted an email in English and Spanish to communicate the incident to families.

111. The following morning, Dr. Johnson and Oakley reviewed the bus footage without consulting Fairouz.

112. Dr. Johnson unilaterally decided to suspend the students involved and ban them from the bus for the remainder of the year.

113. Fairouz strongly objected to this decision, as it was inconsistent with prior disciplinary actions and disregarded at least one student's Behavioral Intervention Plan.

114. Fairouz knew that if any of the students filed civil rights complaints, DMPS would need to show that similar discipline had been imposed in the past.

115. DMPS had *not* imposed similar discipline in the past, and Fairouz believed this disparity would be indicative of discrimination.

116. Fairouz informed Oakley that the decision was unethical and illegal and stated that she would not endorse it.

117. Fairouz's refusal to violate the law appeared to mark a turning point, because shortly after she faced additional hostility from DMPS leadership.

### DMS Places Plaintiff on Administrative Leave

118. About a week later, on October 9, Reif interviewed Fairouz regarding her Human Resources complaint.

12

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

119.    During this meeting, Fairouz provided documentation and specific examples of the hostility and discrimination she had faced, including the troubling September 17 meeting with Mason, Wynn-Green, and Dr. Johnson.

120.    Fairouz believed that this interview would lead to meaningful action and accountability within the district.

121.    The next day, October 10, Chief Academic Officer Dr. Robert Lundin called Fairouz and instructed her to meet him at the Smouse Building.

122.    When Fairouz arrived, Dr. Lundin, along with LeBlanc, informed Fairouz that she was being placed on administrative leave.

123.    Fairouz asked for the reasons behind this sudden decision, but they refused to provide any explanation, offering no timeline for the investigation or details regarding Fairouz's status.

124.    They instructed Fairouz not to contact anyone in the district.

125.    Dr. Lundin then escorted Fairouz back to her office so she could collect her belongings.

126.    DMPS required Fairouz to hand over her keys, computer, and badge, and she was escorted out of the building.

127.    On November 7, attorney Jazmine Polk interviewed Fairouz as part of an investigation into another employee's complaint about her.

128.    Fairouz learned for the first time that Associate Principal Oakley had filed a hostile work environment claim against her.

129.    Fairouz and Oakley had always maintained a positive working relationship.  Fairouz had mentored Oakley and supported her professional development, so the allegations shocked Fairouz.

13

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

130.    The nature and timing of Oakley's allegations led Fairouz to believe this was a coordinated effort with Dr. Johnson to further retaliate against Fairouz, silence her complaints, and punish her for refusing to approve the illegal bus suspensions.

131.    On November 20, 2024, Fairouz filed a complaint with the IOCR against DMPS, alleging discrimination and a hostile work environment based on her race, national origin, and gender.

132.    However, Defendant's discrimination and retaliation did not stop.

**DMPS Continues Retaliation After Plaintiff Files Her First IOCR Complaint**

133. Following Fairouz's November 20, 2024 IOCR complaint, DMPS continued to keep Fairouz on administrative leave for over three months without providing her any updates, support, or follow-up communication.

134. Unlike other principals placed on administrative leave, Fairouz was completely isolated and left in professional limbo.

135. In December 2024, while Fairouz was still on administrative leave, Chief Talent and Personnel Officer Susan Tallman requested to meet with Fairouz to discuss the results of both the investigation into Fairouz's complaint and the counter-complaint filed by Oakley.

136. While scheduling the meeting, Fairouz asked when she would be allowed to return to work, but DMPS provided no substantive response.

**DMPS Issues Vague Reprimand and Demotes Plaintiff**

137. On January 10, 2025, Fairouz met with Tallman and Director of Talent and Personnel Peter LeBlanc to discuss the investigation results.

138. During the meeting, Tallman explained that DMPS would provide only a "high level summary" of the investigation findings and would not share any specific details.

14

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

139. Tallman acknowledged that the investigation process had been flawed and admitted that DMPS should have done a better job communicating with Fairouz throughout the investigation.

140. Tallman and LeBlanc presented extremely vague allegations about Fairouz's conduct, never previously disclosed to her and entirely lacking in specificity or documentation.

141. Many allegations were worded in plural form (implying repeated behavior) despite the fact that during months of administrative leave and subsequent interviews, Fairouz was only ever asked about a single incident.

142. Fairouz received no feedback, coaching, or formal notice about these alleged concerns before this meeting.

143. DMPS refused to identify who made the allegations or provide any context, denying Fairouz the information necessary to respond or defend herself.

144. Tallman informed Fairouz that she would not be returning to her role at Hoyt Middle School and that she would be reassigned to an undetermined "Principal on Special Assignment" position for the remainder of the school year.

145. Tallman further stated that Fairouz would face disciplinary action but that she had not yet determined the appropriate level of discipline, stating only that it could be up to and including termination.

146. On January 29, 2025, Tallman and LeBlanc issued a formal written reprimand to Fairouz.

147. The reprimand reiterated the same vague concerns about Fairouz's leadership without identifying any specific performance failures.

148. The reprimand stated that Fairouz would be reassigned to a "Principal on Special Assignment" role at Virtual Campus for the remainder of the 2024-2025 school year.

15

**EXHIBIT C**

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

149. The reprimand also stated that Fairouz would receive a nonrenewable one-year contract for the 2025-2026 school year.

150. These decisions were made without offering Fairouz a clear path to improve her standing or restore her prior role.

151. While other administrators were offered guidance, coaching, or progressive discipline in accordance with DMPS policy, Fairouz was issued a final reprimand without being given the opportunity to understand or respond to the underlying allegations.

### DMPS Strips Plaintiff of Resources and Isolates Her

152. Fairouz's reassignment to Virtual Campus substantially diminished her responsibilities, authority, and access to professional development opportunities.

153. DMPS did not provide Fairouz with an office, and she was forced to work primarily from home.

154. When Fairouz worked on-site at Virtual Campus, she sat in a visitor's chair in the front office with no private workspace.

155. DMPS stripped Fairouz of clerical and administrative support that is ordinarily provided to principals.

156. DMPS denied Fairouz a designated parking space—a basic professional benefit afforded to other administrators.

157. DMPS cut Fairouz off from district-wide internal leadership communications, including the principal text messaging group and email updates directed to building leaders.

158. Fairouz no longer received monthly in-person principal meeting invitations, which had previously included professional development opportunities, district-wide updates, and collaborative planning sessions on issues such as middle school scheduling and student experience improvements.

16

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

159. DMPS excluded Fairouz from instructional walks with supervisors and the Chief Academic Officer, even when those visits occurred at Virtual Campus where she was assigned.

160. Fairouz no longer received one-on-one coaching meetings with her supervisor, which had previously supported her growth and development as a leader.

161. DMPS denied Fairouz information about professional development opportunities, including training and updates related to the Every Student Succeeds Act ("ESSA"), which all other principals received.

162. Further compounding the retaliatory nature of these actions, DMPS assigned Dr. Kabrina Johnson, the supervisor Fairouz had previously filed a complaint against, to evaluate Fairouz's performance for the first part of the school year.

163. This decision was inappropriate, retaliatory, and clearly undermined any appearance of neutrality or fairness in the evaluation process.

**DMPS Subjects Plaintiff to a Flawed Chapter 102 Investigation**

164. On April 25, 2025, DMPS initiated a Chapter 102 investigation against Fairouz based on allegations that she had physically abused a student identified as C.M.

165. The investigation was riddled with procedural violations and appeared designed to build a case for terminating Fairouz.

166. Chapter 102 of the Iowa Administrative Code establishes specific procedures for investigating allegations of abuse of students by school employees, including strict timelines and disclosure requirements.

167. DMPS violated these procedures at multiple steps of the investigation.

168. Iowa Admin. Code r. 281-102.7 requires that a Level 1 investigator receive a complaint within 24 hours of the school's awareness of alleged abuse.

17

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

169. On April 29, 2025, Fairouz requested a copy of the complaint, and Level 1 investigator Jessie Masteller told Fairouz she would receive it during the interview.

170. In reality, Masteller had not yet received the report herself, and this was four full days after the alleged incident.

171. Chapter 102 further requires that the Level 1 investigator provide a copy of the complaint to the accused employee at the time of the initial interview.

172. Fairouz ultimately received a copy of the complaint when she was interviewed by Masteller on April 30, 2025.

173. On May 1, 2025, Masteller emailed Fairouz to say that she had been directed to share the report with Fairouz's supervisor, Principal Bannikatti.

174. Later that same day, Masteller reversed course, saying Chief Academic Officer Robert Lundin was in fact Fairouz's supervisor.

175. Fairouz had had no direct supervision or contact from Lundin, and he was in no position to evaluate Fairouz's performance in a meaningful way.

176. The confusion about who Fairouz's supervisor was, and the fact that Fairouz was placed under the supervision of another principal, further demonstrated that her reassignment to Virtual Campus was a demotion, not a lateral move.

177. Chapter 102 requires investigators to complete a written report within 15 days of a complaint of abuse, and the report must contain specific elements including the student's identifying information, the nature and extent of the alleged injury, a summary of the investigation, protective actions taken, and a list of options available to the student's parent or guardian.

178. On May 8, 2025, Masteller emailed Fairouz the investigation report, which was only two pages long.

18

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

179. The first page stated that the complaint was deemed "founded" and was being elevated to a Level 2 investigation.

180. The second page listed only the names of individuals interviewed.

181. The report omitted virtually all required content under Chapter 102, including the student's identifying details, the nature of the alleged injury, any summary of the investigation, and any protective actions taken.

182. When Fairouz requested the full report, Masteller stated that she had been instructed to share only the two pages with Fairouz.

183. Masteller copied Director of Central Campus Tasha Brown in this email, who then forwarded the request to Equal Opportunity Manager Carol Wynn-Green, another senior leader Fairouz had previously accused of harassment.

184. Wynn-Green responded that Fairouz had already received more information than required under Chapter 102, which was factually incorrect.

185. When Fairouz followed up by citing the exact language of Chapter 102, Wynn-Green replied, "[T]his process can be a lot," and then resent screenshots of the same incomplete two-page report.

186. Wynn-Green did not acknowledge the missing information and instead dismissed Fairouz's concerns, insinuating that Fairouz did not understand the process.

187. This investigation was riddled with procedural errors, omissions, and inconsistencies.

188. DMPS blatantly disregarded the requirements of the administrative code and treated Fairouz in a manner that lacked transparency, accountability, and fairness.

189. Viewed in the broader context of the sustained pattern of adverse actions Fairouz faced since filing her civil rights complaint, the mishandling of this investigation was yet another clear example of the district's ongoing retaliation.

EXHIBIT C

**DMPS Forces Plaintiff to Resign**

190. On May 29, 2025, DMPS presented Fairouz with a formal ultimatum: resign under a waiver of legal claims or face termination.

191. The resignation document referred to Fairouz as "Martinez," despite her years of service and leadership under the name Dr. Bishara-Rantisi.

192. This misidentification was not a minor oversight. It erased Fairouz's identity and reflected the district's continued bias and discrimination based on her race and national origin.

193. Fairouz ultimately felt she had no choice but to resign or lose her accrued benefits.

194. As a result of the sustained discriminatory and retaliatory treatment by DMPS, Fairouz was constructively discharged on June 27, 2025.

195. At this point, Fairouz no longer believed she would be treated fairly if she remained employed with DMPS.

196. DMPS made it abundantly clear that Fairouz was not welcome and that her presence and advocacy were viewed as a threat rather than an asset.

197. While Fairouz had every intention of continuing her career at DMPS and serving its students with integrity, she could not continue under the discriminatory and retaliatory conditions DMPS created.

198. Fairouz was left with no reasonable option but to leave.

**Defendant's Agents and Employees**

200. Peter LeBlanc was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

201. Susan Tallman was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

20

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

202. Tiffany O'Hara was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

203. Dr. Ian Roberts was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

204. Dr. Matt Smith was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

205. Timothy Schott was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

206. Dr. Kabrina Johnson was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

207. Sheila Mason was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

208. Carol Wynn-Green was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

209. Dr. Robert Lundin was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

210. Jessie Masteller was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of his employment and agency.

211. Tasha Brown was an employee and agent of Defendant Des Moines Public Schools, acting at all material times in the scope of her employment and agency.

**COUNT I**
**VIOLATIONS OF THE IOWA CIVIL RIGHTS ACT**
**SEX DISCRIMINATION, RACE DISCRIMINATION, NATIONAL ORIGIN**
**DISCRIMINATION, and HARASSMENT**

212. Plaintiff repleads paragraphs 1 through 211 as if fully set forth herein.

213. Plaintiff is a Latina woman.

21

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

214. Defendant subjected Plaintiff to harassment and discrimination in violation of the ICRA based on her sex, race, and/or national origin.

215. Defendant subjected Plaintiff to adverse actions in violation of the ICRA because of her sex, race, and/or national origin.

216. Defendant subjected Plaintiff to severe or pervasive harassment because of her sex, race, and/or national origin.

217. Plaintiff's sex, race, and national origin, separately or in combination, were motivating factors in Defendant's discrimination and harassment.

218. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## RETALIATION

219. Plaintiff repleads paragraphs 1 through 218 as if fully set forth herein.

220. Plaintiff complained to Defendant about discrimination and harassment and otherwise opposed practices made unlawful by the ICRA.

221. Defendant engaged in retaliatory conduct against Plaintiff due to her complaints and opposition to discrimination and harassment, including but not limited to the following actions:

➢ Placing Plaintiff on administrative leave;

22

EXHIBIT C

➢ Issuing a written reprimand based on vague and unsubstantiated allegations;

➢ Demoting Plaintiff to a "Principal on Special Assignment" role;

➢ Stripping Plaintiff of her office, administrative support, parking space, and other basic resources;

➢ Excluding Plaintiff from professional development opportunities and leadership communications;

➢ Assigning Plaintiff's harasser to evaluate her performance; and

➢ Constructively discharging Plaintiff.

222. Defendant retaliated against Plaintiff because of her complaints and opposition to discrimination and harassment.

223. Plaintiff's protected activity was a motivating factor in Defendant's retaliation against her.

224. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

**COUNT III**
**VIOLATIONS OF TITLE VII**
**SEX DISCRIMINATION, RACE DISCRIMINATION, NATIONAL ORIGIN DISCRIMINATION, and HARASSMENT**

225. Plaintiff repleads paragraphs 1 through 224 as if fully set forth herein.

23

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

226. Plaintiff is a Latina woman.

227. Defendant subjected Plaintiff to harassment and discrimination in violation of the Title VII based on her sex, race, and/or national origin.

228. Defendant subjected Plaintiff to adverse actions in violation of the Title VII because of her sex, race, and/or national origin.

229. Defendant subjected Plaintiff to severe or pervasive harassment because of her sex, race, and/or national origin.

230. Plaintiff's sex, race, and national origin, separately or in combination, were motivating factors in Defendant's discrimination and harassment.

231.    As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964.

## COUNT IV
## VIOLATION OF TITLE VII
## RETALIATION

232.    Plaintiff repleads paragraphs 1 through 231 as if fully set forth herein.

233.    Plaintiff engaged in protected activity by complaining to Defendant about discrimination and harassment and otherwise opposing practices made unlawful by Title VII.

➢    Placing Plaintiff on administrative leave;

➢    Issuing a written reprimand based on vague and unsubstantiated allegations;

24

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

➤ Demoting Plaintiff to a "Principal on Special Assignment" role;

➤ Stripping Plaintiff of her office, administrative support, parking space, and other basic resources;

➤ Excluding Plaintiff from professional development opportunities and leadership communications;

➤ Assigning Plaintiff's harasser to evaluate her performance; and

➤ Constructively discharging Plaintiff.

234. Plaintiff's protected activity was a motivating factor in Defendant's retaliation against her.

235. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, stress, medical expenses, and lost enjoyment of life.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and post judgment interest, for attorney fees, including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII.

## COUNT V
## VIOLATION OF THE EQUAL PAY ACT OF 1963
## WAGE DISCRIMINATION

236. Plaintiff repleads paragraphs 1 through 235 as if fully set forth herein.

237. Defendant discriminated against Plaintiff by paying her less than her male counterparts performing substantially equal work, in violation of the EPA.

238. Plaintiff and the following individuals were employed as administrators by Defendant Des Moines Public Schools: Chris Schmidt, Thomas Hoffman, Joseph Green, and Victor Colemon.

EXHIBIT C

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

239.    Plaintiff is a woman.

240.    Chris Schmidt, Thomas Hoffman, Joseph Green, and Victor Colemon are men.

241.    Plaintiff and the identified male comparators performed jobs requiring equal skill.

242.    Plaintiff and the identified male comparators performed jobs requiring equal effort.

243.    Plaintiff and the identified male comparators performed jobs requiring equal responsibility.

244.    Plaintiff and the identified male comparators performed their jobs under similar working conditions.

245.    Defendant's violation of the EPA was willful.  It either knew its conduct was unlawful or acted with reckless disregard for whether its compensation practices were prohibited by the statute.

246.    As a result of Defendant's illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to lost wages and employment benefits.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for appropriate equitable and injunctive relief, for prejudgment and post judgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the EPA.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

**EXHIBIT C**

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

_/s/ Amy Beck_

IOWA EMPLOYMENT ATTORNEYS, PLC
Amy Beck AT0013022
amy@iowaemploymentattorneys.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 328-6019
Fax: (515) 513-4657
ATTORNEY FOR PLAINTIFF

27

**EXHIBIT C**

E-FILED  2026 FEB 23 9:59 AM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ,<br><br>Plaintiff,<br><br>vs.<br><br>DES MOINES PUBLIC SCHOOLS,<br><br>Defendant. | Case No. LACL164722<br><br><br><br>**AMENDED<br>ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:    DES MOINES PUBLIC SCHOOLS

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Petition is attached to this notice.  The attorney for the plaintiff is Amy Beck of Iowa Employment Attorneys, P.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa, 50131. Their phone number is (515) 328-6019; facsimile number (515) 513-4657.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 561-5818 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

**EXHIBIT D**

| **Iowa Judicial Branch** | *Case No.* | **LACL164722** |
|---|---|---|
| | *County* | **Polk** |

*Case Title*   FAIROUZ B R MARTINEZ VS DES MOINES PUBLIC SCHOOLS

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 561-5818** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **02/23/2026 01:44:13 PM**



*District Clerk of Court or/by Clerk's Designee of* Polk          *County*
**/s/ Cole Heim**

**EXHIBIT D**

E-FILED  2026 FEB 24 10:32 AM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ,<br><br>        Plaintiff,<br><br>vs.<br><br>DES MOINES PUBLIC SCHOOLS,<br><br>        Defendant. | Case No. LACL164722<br><br><br>**AFFIDAVIT OF SERVICE** |

STATE OF IOWA            )
                         ) SS:
COUNTY OF POLK           )

I, Joe Wagner, being duly sworn on oath depose and state that I am neither a party to the above-entitled cause of action, nor an attorney representing either party, that on the 23rd day of February, 2026, I served the Amended Original Notice and Amended Petition and Jury Demand upon Des Moines Public Schools by personally serving a copy to Rosa Rios, 2100 Fleur Drive, Des Moines, IA, 50321.

I certify under penalty of perjury and pursuant to the laws of the State of Iowa that the foregoing is true and correct.

Dated this 24th day of February, 2026.

_____
Joe Wagner

Service Fees:

| | |
|---|---|
| Process | $ 15.00 |
| Mileage | $ 11.17 |
| Total: | $ 26.17 |

**EXHIBIT E**

E-FILED  2026 FEB 12 1:38 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ, <br><br> Plaintiff, <br><br> vs. <br><br> DES MOINES PUBLIC SCHOOLS, <br><br> Defendant. | Case No. LACL164722 <br><br><br> **NOTICE OF WITHDRAWAL OF COUNSEL** |

COMES NOW attorney Ashley Griffin of Fielder Law Firm, PLC and hereby withdraws from representation of the Plaintiff, Fairouz Bishara-Rantisi Martinez, in this matter. Amy Beck will continue representing Plaintiff, and Plaintiff has consented to Attorney Griffin's withdrawal and Attorney Beck's continuing representation. This notice will be automatically served on counsel for Defendant and will be served via email on Plaintiff Fairouz Bishara-Rantisi Martinez.

Dated: February 12, 2026

_/s/  Ashley Griffin_____
FIEDLER LAW FIRM, P.L.C.
Ashley Griffin AT0015719
ashley@employmentlawiowa.com
8831 Windsor Parkway
Johnston, Iowa 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEY FOR PLAINTIFF

**EXHIBIT F**

E-FILED          LACL164722 - 2026 FEB 16 08:41 AM          POLK
                    CLERK OF DISTRICT COURT                    Page 1 of 2

## IN THE DISTRICT COURT OF IOWA IN AND FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA RANTISI MARTINEZ<br>Plaintiff | 05771  LACL164722 |
| VS. | **ORDER GRANTING MOTION TO WITHDRAW** |
| DES MOINES PUBLIC SCHOOLS<br>Defendant | |

This matter is before the Court upon a Motion to Withdraw Appearance as Counsel for Plaintiff filed by Ashley Griffin.  Upon review of the file and the Motion, the Court FINDS that the motion should be granted.

IT IS SO ORDERED.

**Dated this 16th day of February, 2026.**

EXHIBIT F

E-FILED          LACL164722 - 2026 FEB 16 08:41 AM          POLK
                    CLERK OF DISTRICT COURT                Page 2 of 2



State of Iowa Courts

| Case Number | Case Title |
| --- | --- |
| LACL164722 | FAIROUZ B R MARTINEZ VS DES MOINES PUBLIC SCHOOLS |
| Type: | ORDER APPROVING WITHDRAWAL OF COUNSEL |

So Ordered



Joseph Seidlin, District Court Judge
Fifth Judicial District of Iowa

Electronically signed on 2026-02-16 08:41:49

**EXHIBIT F**

E-FILED  2026 FEB 27 2:10 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ, | Case No. LACL164722 |
| Plaintiff, | |
| v. | **NOTICE OF CHANGE OF ADDRESS AND CONTACT INFORMATION** |
| DES MOINES PUBLIC SCHOOLS, | |
| Defendant. | |

COMES NOW attorney Amy Beck of Iowa Employment Attorneys, PLC and hereby gives notice that effective February 27, 2026, counsel's firm affiliation and contact information have changed as follows:

New Firm Name:

**Iowa Employment Attorneys, P.L.C.**

Address:

**7001 Westown Pkwy, Suite 212**
**West Des Moines, IA 50266**

Telephone:

**(515) 328-6019**

Email:

**amy@iowaemploymentattorneys.com**

Dated: February 27, 2026

1

**EXHIBIT G**

E-FILED  2026 FEB 27 2:10 PM POLK - CLERK OF DISTRICT COURT

_/s/ Amy Beck_
IOWA EMPLOYMENT ATTORNEYS, P.L.C.
Amy Beck AT0013022
amy@iowaemploymentattorneys.com
Iowa Employment Attorneys, P.L.C.
7001 Westown Pkwy, Suite 212
West Des Moines, IA 50266
Telephone: (515) 328-6019
Fax: (515) 513-4657
ATTORNEY FOR PLAINTIFF

2

**EXHIBIT G**

E-FILED  2026 FEB 27 2:13 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ, <br><br> Plaintiff, <br><br> vs. <br><br> DES MOINES PUBLIC SCHOOLS, <br><br> Defendant. | CASE NO. LACL164722 <br><br><br> **APPEARANCE OF COUNSEL** |

COMES NOW attorney David Albrecht of Iowa Employment Attorneys, PLC and hereby enters his appearance on behalf of the Plaintiff, Fairouz Bishara-Rantisi Martinez, in this matter.  Counsel requests that court records be updated accordingly.

Dated: February 27, 2026

_/s/ David Albrecht_
IOWA EMPLOYMENT ATTORNEYS, P.L.C.
David Albrecht AT0012635
david@iowaemploymentattorneys.com
7001 Westown Pkwy, Suite 212
West Des Moines, IA 50266
Telephone: (515) 328-6019
Fax: (515) 513-4657
ATTORNEY FOR PLAINTIFF

**EXHIBIT H**