IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| FAIROUZ BISHARA-RANTISI MARTINEZ, | ) | Case No. 4:26-cv-00113-SMR-SBJ |
| | ) | |
| Plaintiff, | ) | ORDER ON PARTIAL MOTION TO |
| | ) | DISMISS |
| v. | ) | |
| | ) | |
| DES MOINES PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Fairouz Bishara-Rantisi Martinez alleges that Defendant Des Moines Public

Schools discriminated, harassed, and retaliated against her in violation of the Iowa Civil Rights

Act ("ICRA") and Title VII of the Civil Rights Act of 1964. [ECF No. 1-2]. Defendant moves to

dismiss Counts I and III pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF Nos. 1, 2].

For the reasons that follow, Defendant's motion is GRANTED in part and DENIED in part.

I.      BACKGROUND[1]

Plaintiff is a Latina woman who has over 20 years of experience in education and holds

three master's degrees and a doctorate in Educational Leadership and Administration. [ECF No.

1-2, Ex. C, ¶¶ 11, 15]. In April 2022, she applied for Defendant's Executive Director of Leadership

and Learning position. *Id.* ¶ 12. Her credentials far exceeded those of the non-Latina employee

who previously held the job. *Id.* ¶ 16. Plaintiff completed a phone interview and an in-person

interview, but Defendant opted not to fill the role. *Id.* ¶¶ 13–14. However, Plaintiff was

---

[1] The following facts are drawn from Plaintiff's amended petition and accepted as true for purposes of Defendant's Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

encouraged to apply for other positions. *Id.* ¶ 17. She did so, subsequently accepting Defendant's job offer to serve as principal at Hoyt Middle School on July 1, 2022. *Id.* ¶¶ 18–19.

On Plaintiff's first day, Defendant failed to offer a structured orientation or onboarding. *Id.* ¶ 21. The computer system did not accept Plaintiff's name, an issue Defendant attributed to length and the IT department being unprepared "for foreign names." *Id.* ¶ 22. It took more than one week for Plaintiff to gain access to basic systems. *Id.* ¶ 23.

In September 2022, Plaintiff noticed that another administrator had changed his email signature to "Executive Director of Teaching and Learning," a name similar to the position to which she had applied. *Id.* ¶ 25. This individual, a white male, had far less experience than Plaintiff and did not have a doctorate degree. *Id.* ¶¶ 27–29. Defendant never reposted the job or announced that it had been filled internally. *Id.* ¶ 26.

Plaintiff also identified issues with her compensation and benefits during the 2022-2023 school year. She discovered that Defendant had shorted her five days of sick leave, which Defendant corrected only after months of calls and emails. *Id.* ¶¶ 36–37. She also learned that white male administrators, often with less experience and education, were earning more than her. *Id.* ¶¶ 32–33. These pay disparities extended to others in the district; a disproportionate number of those affected were women of color. *Id.* ¶ 34. Defendant claimed to address the disparity in the 2023-2024 school year contracts but refused to make the correction retroactive. *Id.* ¶ 35.

Plaintiff also alleges that Defendant diminished her accomplishments. In June 2023, Hoyt Middle School was recognized as a Model Middle School, an honor given to only eleven schools nationwide. *Id.* ¶ 38. Defendant offered no formal acknowledgment. *Id.* ¶ 40. In July 2023, Plaintiff received a phone screening and a second interview for a Director of Secondary Teaching and Learning role, but Defendant elected to seek a "wider pool" of candidates and declined to fill

the position.  *Id.* ¶¶ 42–44, 52.  When Plaintiff requested feedback, she was told that she had a "savior complex" and was "too Latina."  *Id.* ¶¶ 45–47.  She was also criticized for focusing on Latina students and highlighting her own successes.  *Id.* ¶¶ 47–49.

Undeterred, Plaintiff applied for Defendant's Chief Academic Officer role in November 2023 and its Director of Middle Schools in December.  *Id.* ¶¶ 53, 59.  Plaintiff's application for Chief Academic Officer was summarily denied on February 18, 2024.  *Id.* ¶¶ 56–58.  She participated in a phone screening and a second-round interview for the Director of Middle Schools role, only to learn in a 49-second phone call that she had not been selected.  *Id.* ¶¶ 60–63.

Instead, Defendant hired Dr. Kabrina Johnson, a black woman, for the position.  *Id.* ¶¶ 66–67.  Dr. Johnson had never served as a principal and had worked only briefly as an associate principal and consultant.  *Id.* ¶ 68.  When Dr. Johnson visited Hoyt Middle School in May 2024, Plaintiff found her unfamiliar with Hoyt's challenges and dismissive of Plaintiff's accomplishments and those of her team.  *Id.* ¶¶ 69, 74.  Plaintiff also witnessed her belittle teachers and speak to students in a derogatory manner.  *Id.* ¶¶ 70, 71. Shortly after arriving, Dr. Johnson referred to Plaintiff's accent by asking her, "Where are you from?"  *Id.* ¶ 72.  Plaintiff interpreted this question as inappropriate and invasive, reducing her identity to her ethnicity.  *Id.* ¶ 73.

In another meeting, Defendant's Human Resources Director described Plaintiff as "aggressive"—a word Plaintiff found offensive because it plays into stereotypes often applied to women of color.  *Id.* ¶¶ 80, 81.  After Plaintiff voiced her discomfort with that word, the Human Resources Director continued to use it.  *Id.* ¶ 82.

Matters came to a head in late 2024.  On August 26, a bus incident prompted Plaintiff to contact her team and speak with the student's parent.  *Id.* ¶¶ 83–86.  She then coordinated with Associate Principal Brittany Oakley to address the matter.  *Id.* ¶ 87.  Plaintiff later emailed Dr.

Johnson and another administrator that she believed Hoyt Middle School was facing urgent safety concerns without meaningful support; neither replied. *Id.* ¶¶ 88–90.

On September 17, Plaintiff was summoned to a meeting with Dr. Johnson and other administrators to discuss her handling of disciplinary and staff relations incidents. *Id.* ¶¶ 92, 93. They alleged that she failed to create a supportive environment and had misrepresented disciplinary actions, but did not identify specific incidents. *Id.* ¶¶ 94, 96. Six days later, Plaintiff filed a complaint with human resources alleging a hostile work environment and bias. *Id.* ¶ 100. An attorney was assigned to investigate the claims. *Id.* ¶ 102.

On October 2, Dr. Johnson informed Plaintiff of student misbehavior on the bus, a situation that had escalated due to a language barrier. *Id.* ¶¶ 103–04, 108. Plaintiff notified her associate principals, arrived on scene, attempted to resolve the matter, and drafted an email to inform families of the incident. *Id.* ¶¶ 105–06, 110. The following day, Dr. Johnson and Oakley reviewed the incident without consulting Plaintiff. *Id.* ¶ 111. Dr. Johnson suspended the students and banned them from the bus for the remainder of the year. *Id.* ¶ 112. Plaintiff resisted that decision and told Oakley so. *Id.* ¶¶ 113, 116.

On October 9, Plaintiff was interviewed regarding her human resources complaint. *Id.* ¶ 118. The next day, she was placed on administrative leave. *Id.* ¶¶ 121–22. Plaintiff was not given an explanation. *Id.* ¶ 123. Several weeks later, she learned that Oakley had filed a hostile work environment claim against her. *Id.* ¶¶ 127–28. On November 20, Plaintiff filed a complaint with the Iowa Office of Civil Rights ("IOCR") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and hostile work environment based on race, national origin, and gender. *Id.* ¶¶ 5, 131.

Plaintiff remained on administrative leave in the interim. *Id.* ¶ 133. Unlike other principals placed on leave, she did not receive updates or support. *Id.* ¶¶ 133–34. In December, Defendant's Chief Talent and Personnel Officer scheduled a January 10, 2025 meeting to discuss the results of the investigation into Plaintiff's and Oakley's complaints. *Id.* ¶ 135. During that meeting, Defendant presented only a "high level summary" of the findings, along with vague allegations not previously disclosed. *Id.* ¶¶ 137–43. Plaintiff was formally reprimanded and reassigned to an undefined "Principal on Special Assignment" role at Virtual Campus for the remainder of the school year. *Id.* ¶¶ 144–48. She was also to receive a nonrenewable one-year contract for the 2025-2026 school year. *Id.* ¶ 149. Unlike other administrators, she was not offered guidance, coaching, or progressive discipline. *Id.* ¶¶ 150–51.

The reassignment deprived Plaintiff of an office, clerical and administrative support, a parking space, access to internal leadership communications and meetings, and professional development opportunities. *Id.* ¶¶ 152–61. Dr. Johnson was assigned to evaluate Plaintiff's performance even though Plaintiff had previously filed a complaint against her. *Id.* ¶ 162.

On April 25, 2025, Defendant opened another investigation into Plaintiff following an allegation that she physically abused a student. *Id.* ¶ 164. Defendant failed to refer the complaint to an investigator in a timely fashion or to specify the complainant, the nature and extent of the alleged injury, the protective actions taken, and a summary of the investigation. *Id.* ¶¶ 165–72, 177–86. Confusion regarding who was Plaintiff's supervisor also emerged, leading Plaintiff to conclude that her "reassignment" was actually a demotion. *Id.* ¶¶ 173–76. Her request for additional information about the investigation was denied. *Id.* ¶¶ 182–86.

On May 29, 2025, Defendant informed Plaintiff that she could resign or be terminated. *Id.* ¶ 190. Plaintiff resigned to preserve her accrued benefits. *Id.* ¶ 193. The resignation document

addressed her as "Martinez" rather than by her professional name, Dr. Bishara-Rantisi. *Id.* ¶ 191. Plaintiff interpreted this act as reflecting Defendant's continued bias and discrimination. *Id.* ¶ 192.

Plaintiff filed additional charges of employment discrimination with the IOCR and EEOC on July 25, 2025. *Id.* ¶ 8. The IOCR issued right-to-sue letters on September 4 and December 11, 2025; the EEOC followed suit on December 5, 2025, and February 9, 2026. *Id.* ¶¶ 6–7, 9–10. Plaintiff then filed this lawsuit in state court. Defendant removed to federal court.

Plaintiff asserts five claims. Counts I and III allege sex, race, and national origin discrimination, along with harassment in violation of the ICRA and Title VII. *Id.* ¶¶ 212–18, 225–31. Counts II and IV allege retaliation under both statutes. *Id.* ¶¶ 219–24, 232–35. Count V alleges wage discrimination in violation of the Equal Pay Act of 1963. *Id.* ¶¶ 236–46. Defendant moves to dismiss Counts I and III for failure to state a claim. [ECF No. 2].

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility demands more than mere possibility—it requires factual allegations that permit the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Although the Court accepts all well-pleaded facts as true and construes all reasonable inferences in Plaintiff's favor, it need not credit bare legal conclusions or "naked assertions devoid of further factual enhancement." *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Under the Rule 8 standard, a plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose is to "give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (citation omitted). Specific facts are not necessary, but the allegations must give the defendant fair notice of the claim and the grounds on which it rests. *Johnson v. Precythe*, 954 F.3d 1098, 1101 (8th Cir. 2020). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

## III.    DISCUSSION

Defendant raises two arguments. [ECF No. 2]. First, that Plaintiff has failed to allege sufficient facts showing she experienced an adverse action, or that any adverse action gives rise to an inference of discrimination based on her membership in a protected class. *Id.* ¶ 3; *see also* [ECF No. 2-1 at 3–5]. Second, that she has not alleged sufficient facts showing she experienced actionable harassment based on a protected characteristic, as a hostile work environment claim requires. [ECF Nos. 2 ¶ 4; 2-1 at 6].

Plaintiff resists. [ECF No. 3]. She contends that Defendant misreads her pleading and that her claims are premised on sex-plus discrimination—her status as both a woman and a Latina, characteristics that cannot be disaggregated. *Id.* ¶ 3. More importantly, Plaintiff maintains that her amended petition contains sufficient facts because it identifies adverse actions flowing from the combination of those protected characteristics. *See* [ECF No. 3-1]. Alternatively, Plaintiff requests leave to amend. *Id.* at 19.

### A. Discrimination

Title VII makes it unlawful "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff need not plead facts to establish a *prima facie* case, but its elements remain highly relevant to the Court's analysis of a Rule 12(b)(6) motion. *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). To establish a *prima facie* claim under Title VII, a plaintiff must demonstrate that she (1) is a member of a protected class, (2) met her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014). The ICRA imposes a similar test. *See Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n*, 672 N.W.2d 733, 741 n.1 (Iowa 2003).

Defendant's arguments primarily relate to the third and fourth elements. [ECF No. 2-1 at 3]. An adverse action occurs when an individual experiences "a disadvantageous change to the compensation, terms, conditions, or privileges of employment." *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (citing *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024)); *see also Rheeder v. Gray*, 23 N.W.3d 1, 15–16 (Iowa 2025) (same). That requires only "some harm respecting an identifiable term or condition of employment." *Brokken v. Hennepin County*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted); *see also Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 587 (Iowa 2017) (identifying potential adverse actions).

The grounds supporting Plaintiff's discrimination claims (Counts I and III) are far less clear than those for her retaliation claims (Counts II and IV). Every claim realleges the facts previously set forth. *See* [ECF No. 1-2, Ex. C., ¶¶ 212, 219, 225, 232, 236]. The retaliation claims then

identify the seven retaliatory acts Defendant allegedly committed. *Id.* ¶¶ 221, 233. The discrimination claims contain no such enumeration. Rather, Plaintiff only asserts the legal conclusion that "Defendant subjected Plaintiff to adverse actions in violation of the [ICRA/Title VII] because of her sex, race, and/or national origin." *Id.* ¶¶ 215, 228. She does not allege that any of the incidents described in her amended petition is itself an adverse action.

This omission forms the basis of Defendant's argument that the discrimination claims are too ambiguous to permit it to evaluate applicable affirmative defenses. [ECF No. 2-1 at 4]. The Court agrees. Plaintiff pleads facts, and she pleads legal conclusions, but her discrimination claims never marry the two. Given the sweep of her allegations—conduct spanning several years—the Court is unable to determine what allegations are brought under Counts I and III. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795–96 (8th Cir. 2021) (holding plaintiffs "must include sufficient factual allegations to provide the grounds on which the claim rests") (citation omitted).

The ambiguity is confirmed by a tension between Plaintiff's amended petition and her resistance. In the amended petition, Plaintiff incorporates every preceding paragraph into Counts I and III. [ECF No. 1-2, Ex. C., ¶¶ 212, 225]. But her resistance enumerates the specific acts she contends were adverse actions, a list that does not capture every allegation that could arguably fit within the definition. [ECF No. 3-1 at 13–14]. The failure to identify this conduct in the amended petition—and the protected characteristic these actions were based on—demonstrates that Plaintiff did not "include sufficient factual allegations to provide the grounds on which the claim rests." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (citation omitted).

Plaintiff's allegations are wide-ranging. For example, she alleges that Defendant failed to honor the sick-leave terms of her contract in 2022 and that it conducted a flawed investigation into

a physical abuse report in 2025, along with many allegations in between.  [ECF No. 1-2, Ex. C., ¶¶ 36, 165].  These allegations are vastly different, and it is unclear whether Plaintiff is alleging that one, both, or neither is an adverse action forming the basis of Counts I and III.  Because she does not allege that any particular incident was an adverse employment action, the Court cannot conclude that any of the allegations gives rise to an inference of discrimination based on her protected status as a Latina woman.

The Court is in no position to guess which actions Plaintiff believes were adverse for purposes of her discrimination claims, nor is it "required to divine the litigant's intent and create claims that are not clearly raised."  *Warmington*, 998 F.3d at 796 (citation omitted).  The Eighth Circuit reached this conclusion in another Title VII case, adding that a district court "need not conjure up unpled allegations to save a complaint."  *Id.* (citation omitted).  That is what Plaintiff asks the Court to do here.

This conclusion leads to a related dispute.  Plaintiff faults Defendant for misreading her amended petition and demanding that she disaggregate her claims.  [ECF No. 3 ¶ 3].  She contends that Defendant's motion is an attempt to "manufacture ambiguity."  [ECF No. 3-1 at 11].  But any want of clarity is not of Defendant's own creation, it was Plaintiff who did not plead the sex-plus discrimination theory on which her resistance so heavily depends.

Counts I and III both allege discrimination based on "sex, race, and/or national origin."  *See* [ECF No. 1-2, Ex. C., ¶¶ 214–16, 227–29].  The disjunctive shows that Plaintiff did not confine herself to a sex-plus discrimination theory—as made plain by her own allegation that "sex, race, and national origin, *separately or in combination*, were motivating factors in Defendant's discrimination and harassment."  *Id.* ¶¶ 217, 230 (emphasis added).  A brief cannot rewrite the petition it defends.  *See Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.

1989) (citation omitted).  Accordingly, the amended petition never alleges which adverse action Plaintiff suffered on account of which protected characteristic.

### B.  Hostile Work Environment

Defendant also contends that Plaintiff failed to plead an actionable harassment claim, because she did not identify the harassing conduct at issue or the protected status on which her hostile work environment claim rests.  [ECF No. 2-1 at 5–6].  Defendant acknowledges that Plaintiff alleges she was "subjected" to "severe or pervasive harassment because of her sex, race, and/or national origin," but argues that she did not identify any conduct that meets this definition or the protected status forming the basis for the claim.  *Id.* at 6.

Hostile work environment claims under the ICRA and Title VII require a plaintiff to show that she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment.  *Haskenhoff*, 897 N.W.2d at 571 (ICRA); *Blomker*, 831 F.3d at 1056 (same under Title VII, but also requiring that "the employer knew or should have known of the harassment and failed to take proper remedial action").  Courts evaluate the totality of the circumstances when considering whether a complaint alleges an objectively hostile work environment.  *Warmington*, 998 F.3d at 799.  The conduct must amount to more "than a few isolated incidents," the harassment must also "be so intimidating, offensive, or hostile that it poisoned the work environment."  *Id.* (quoting *Blomker*, 831 F.3d at 1056).  That is a demanding standard.  *Id.*

Plaintiff's harassment claim stands on different footing from her discrimination claim.  The defect that sinks Counts I and III as disparate-treatment claims—the failure to identify a discrete adverse action and tie it to a protected characteristic—does not carry over to the hostile work

environment analysis. A harassment claim is not built incident by incident. The environment is assessed as a whole, and the Eighth Circuit has cautioned against parsing the conduct into discrete episodes, because "a work environment is shaped by the accumulation of abusive conduct, and the resulting harm cannot be measured by carving it into a series of discrete incidents." *EEOC v. BNSF Ry. Co.*, 150 F.4th 948, 965 (8th Cir. 2025) (citation omitted). The dispositive question is not whether any single act was harassment, but whether the workplace as a whole was hostile.

Measured against that standard, Defendant's argument misses its mark. Defendant does not contend that the conduct Plaintiff alleges, taken together and accepted as true, falls short of the demanding standard for a hostile work environment. It argues instead that it cannot tell what that conduct is. But the petition was not silent on the point. It identifies, by actor, date, and statement, that Plaintiff was told she was "too Latina" and faulted for her focus on Latina students; that a supervisor asked "Where are you from?" in reference to her accent within minutes of meeting her; and that the district dismissed her name as one it was "not prepared for" because it was "foreign." [ECF No. 1-2, Ex. C, ¶¶ 22, 47–49, 72–73]. Whether that conduct and Plaintiff's additional allegations, viewed in the aggregate, were severe or pervasive enough to alter the conditions of Plaintiff's employment is a question for a developed record. It is not resolved by Defendant's insistence that it cannot identify the conduct at all. Having failed to engage the claim on the ground that governs it, Defendant's motion to dismiss the hostile work environment claim is denied.

## C. Prejudice

One final dispute remains. Defendant contends that the amended petition must be dismissed with prejudice because Plaintiff declined an opportunity to amend after Defendant moved to dismiss. [ECF No. 4 at 1].

The sequence matters.  One day after Defendant moved to dismiss, Plaintiff advised that she intended to amend to address the pleading issues Defendant had raised.  [ECF No. 4-1 at 4]. Before Defendant responded, Plaintiff filed her resistance to the motion to dismiss and alternatively sought leave to amend.  [ECF No. 3].  Defendant subsequently informed Plaintiff multiple times that it would not oppose amendment, but cautioned that her alternative request for leave to amend was improper under Local Rule 7(e).  [ECF No. 4-1 at 3–4].  Plaintiff declined to move for leave and stood on her resistance, explaining that she had attached a proposed second amended petition only "in the event the Court chose to go that route." *Id.* at 2.

The Court agrees that Plaintiff's alternative request for leave is improper under Local Rule 7(e).  It will not consider the proposed second amended petition attached to her resistance.  [ECF No. 3-2].  Nonetheless, although a motion for leave and an unresisted amendment would have resolved this dispute far more efficiently, dismissal with prejudice is not warranted.

The law favors resolving cases on their merits.  Rule 15(a)(2) instructs that leave to amend should be freely given. That preference is strongest in discrimination cases, where "summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017).  The defect in Plaintiff's disparate-treatment allegations is a pleading omission, not a substantive failure, and one readily cured.  Defendant will suffer minimal prejudice—if any—from dismissal of those claims without prejudice, and Plaintiff is permitted to seek leave to amend.

IV.    CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss is GRANTED in part and DENIED in part.  [ECF No. 2].  The motion is granted as to Plaintiff's disparate-treatment discrimination claims within Counts I and III, which are DISMISSED without prejudice.  It is

denied as to Plaintiff's hostile work environment claims within those counts, which may proceed.

Should Plaintiff wish to replead the dismissed claims, she shall move for leave to amend within

14 days of this Order.

IT IS SO ORDERED.

Dated this 12th day of June, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT